UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ALLIED TRANSIT CORP., EMPIRE
STATE BUS CORP., and EMPIRE CHARTER
SERVICE, INC.,

                                Plaintiffs,

        - against -

LOCAL 854 PENSION FUND,

                                Defendant.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 21-CV-10556 (CS)

Appearances:

Jennifer S. Smith
Law Offices of Jennifer Smith PLLC
New York, New York
*Counsel for Plaintiffs*

Joseph E. Clark
Sydney L. Juliano
Proskauer Rose LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

Before the Court is the motion of Plaintiffs Allied Transit Corp., Empire State Bus Corp., and Empire Charter Service, Inc. (collectively, "Allied" or "Plaintiffs"), (ECF No. 59), for an order (1) entering judgment on the Court's April 26, 2024 Order, (ECF No. 55 (the "Allied Order")), that adopted and applied to this case the March 22, 2024 opinion and order in the related case *Mar-Can Transp. Co., Inc. v. Loc. 854 Pension Fund*, No. 20-CV-8743, 2024 WL 1250716, at *1 (S.D.N.Y. Mar. 22, 2024) (the "*Mar-Can* Decision"), and (2) directing Defendant Local 854 Pension Fund ("Defendant" or the "Old Plan") to produce an accounting of Allied's withdrawal liability overpayment, with interest (the "Judgment Amount").

## I.    **BACKGROUND**

I assume the parties' familiarity with the record, and with the *Mar-Can* Decision, and therefore only briefly summarize the background and procedural history leading up to this motion.  The Complaint alleges the following facts, which are not disputed unless otherwise noted:  Defendant Old Plan is a multi-employer defined benefit pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.*[1] (*See* ECF No. 1 ("Compl.") ¶¶ 18-19.)  Before September 14, 2020, Allied participated in the Old Plan through a collective bargaining agreement ("CBA") with the International Brotherhood of Teamsters Local 553 (the "Old Union"), (*id.* ¶¶ 21, 30-31), which required Allied to contribute to the Old Plan for employees who performed work covered by that CBA, (*id.* ¶ 31).  On or about September 14, 2020, the National Labor Relations Board ("NLRB") certified the results of Allied's employees' election to leave the Old Union and join Local 854 of the Amalgamated Transit Workers ("ATW") Union.  (*Id.* ¶ 33; *see id.* ¶ 22.)  This change of the employees' collective bargaining representative triggered Allied's involuntary complete withdrawal from the Old Plan.  (*Id.* ¶¶ 34-35, 86, 88.)[2]  Allied entered into a new CBA with the ATW Union, in which it agreed to contribute to the ATW Fund (the "New Plan")[3] on behalf of its employees, and began doing so in October 2020.  (*Id.* ¶¶ 43-45.)

On or about October 22, 2020, the Old Plan sent Allied a memo that calculated Allied's withdrawal liability with respect to the Old Plan.  (*Id.* ¶ 53.)  Allied replied on October 23, 2020, pursuant to 29 U.S.C. § 1415(b), advising the Old Plan that Allied's employees would participate

---

[1] The Court refers to ERISA sections by their numbering in Title 29 of the U.S. Code.

[2] In its answer, the Old Plan denied some of these allegations regarding Allied's withdrawal.  (*See* ECF No. 13 ("Answer") ¶¶ 34-35.)

[3] The ATW Fund is a multiemployer defined benefit pension plan.  (Compl. ¶¶ 23-25.)

in the New Plan because of the certified change in their collective bargaining representative and requesting that the Old Plan initiate the pension transfer and reduce the withdrawal liability assessment as to Allied.  (*Id.* ¶¶ 54-55.)  The Old Plan did not respond, (*id.* ¶ 56), and on November 24, 2020, the Old Plan informed Allied that the October 22 memo had been sent in error, (*id.* ¶ 57.)  On March 5, 2021, Allied advised the Old Plan of its obligation to transfer pension assets and liabilities to the ATW Fund in accordance with 29 U.S.C. § 1415 and requested that the Old Plan start the transfer and reduce Allied's withdrawal liability.  (*Id.* ¶ 58.) The Old Plan did not respond.  (*Id.* ¶ 59.)[4]

On September 9, 2021, the Old Plan notified Allied about its withdrawal under ERISA's relevant notice provisions, assessed Allied's withdrawal liability to the Old Plan as $373,851, plus interest, and demanded payment of that withdrawal liability in fourteen quarterly installments:  thirteen payments of $29,765 and one payment of $11,296, plus interest, (*id.* ¶¶ 64-66).  On December 3, 2021, Allied requested that the Old Plan review its withdrawal liability and advised that the Old Plan had to execute the 29 U.S.C. § 1415 transfer, reduce Allied's withdrawal liability under 29 U.S.C. § 1391(e), estimate the reduction, and adjust the payment schedule accordingly.  (*Id.* ¶¶ 68-71.)[5]  Allied alleges that the Old Plan refused to initiate the

---

[4] In its Answer, while the Old Plan admitted it did not respond, it purported to deny the allegations regarding the correspondence from October 22, 2020 through March 5, 2021 and stated that the contents of the letters referenced in the respective paragraphs "are self-evident," (Answer ¶¶ 53-55, 57-58).

[5] The Old Plan likewise purported to deny the allegation regarding the December 3, 2021 letter and stated that the contents of the letter "are self-evident."  (Answer ¶ 71.)

pension transfer or to reduce Allied's withdrawal liability as a result of that transfer. (*See id.* ¶¶ 72, 77-80.) [6]

On December 9, 2021, Allied commenced this lawsuit, asserting that: (1) under 29 U.S.C. § 1415(b) the Old Plan must initiate the process of transferring pension assets and liabilities to the New Plan, (2) the Old Plan must reduce Allied's employer withdrawal liability by the amount of unfunded vested benefits transferred to the New Plan, estimate that reduction under 29 U.S.C. § 1391(e), and adjust the payment schedule accordingly; (3) the Old Plan is required to execute the transfer of pension assets and liabilities to the New Plan under 29 U.S.C. § 1415; and (4) the Old Plan must reduce Allied's withdrawal liability to the Old Plan by an amount equal to the excess of unfunded vested benefits transferred to the New Plan. (*See* Compl. ¶¶ 85-116.) [7] On January 14, 2022, the Old Plan filed its Answer, (ECF No. 13), and on March 30, 2022, then-Magistrate Judge Paul Davison so-ordered a discovery plan, (ECF No. 21).

In October 2022, the § 1415 transfer was completed, (*see* ECF Nos. 42, 43), and on November 28, 2022, the parties requested a formal stay of proceedings pending this Court's resolution of summary judgment motions then pending in the related *Mar-Can* case, in light of the common legal issues in both cases, (*see* ECF No. 42). Two days later, then-Magistrate Judge Davison granted the parties' application and stayed the discovery deadlines as requested. (ECF

---

[6] The Old Plan denied these allegations, stating that it had not initiated the § 1415 transfer "because Plaintiffs have failed to meet the requirements" of that statute, (Answer ¶ 72), that it required necessary information from Allied regarding the New Plan, that it would transfer assets and liabilities once it had determined that the necessary conditions had been met, and that it would reduce Allied's withdrawal liability and adjust the payment schedule accordingly, (*see id.* ¶¶ 77-80)

[7] While Allied's claims refer only to a reduction under § 1391(e), I regard the complaint as broad enough to include Allied's request for a recalculation of withdrawal liability under the overall ERISA framework, including any reduction under § 1415(c).

No. 43.)  On November 30, 2022, the Old Plan sent a letter to Allied, reducing the initial

withdrawal liability assessment to $290,380, purportedly in accordance with § 1415(c) as a result

of the § 1415 transfer of assets and liabilities.  (*See* ECF No. 59-8 at 1.)  The Old Plan also

revised Allied's payment schedule to require ten quarterly payments of $29,765 and a final

eleventh payment of $5,545, plus interest.  (*See id.*)  Allied has made all of those required

payments.  (*See* ECF No. 59-1 ¶¶ 18-19; ECF No. 62 ¶ 9; *see also* ECF No. 61 ("Old Plan's

Opp.") at 4; ECF No. 66 ("Allied's Reply") at 3.)[8]

On March 22, 2024, I issued the *Mar-Can* Decision that disposed of the parties' motions

for summary judgment and resolved the outstanding legal issue regarding the interpretation and

application of 29 U.S.C. § 1415(c), and on April 26, 2024, after conferring with the parties, (*see*

Minute Entry dated April 26, 2024), I ordered that the *Mar-Can* Decision applies in this case,

(*see* Allied Order (attaching *Mar-Can Transp. Co., Inc. v. Loc. 854 Pension Fund*, No. 20-CV-

8743 ECF No. 249, 2024 WL 1250716 (S.D.N.Y. Mar. 22, 2024))).  The instant motion

followed.

---

[8] Allied argues that that the Old Plan must clarify how it booked each of Allied's
payments, which is complicated by the fact that the Old Plan modified the initial assessment of
Allied's withdrawal liability in November 2022.  (*See* ECF No. 60 ("Allied's Mem.") at 3.)
Indeed, the Old Plan recognizes that Allied appears to have paid approximately $24,000 more
than the Old Plan's withdrawal liability assessment required.  (*See* Old Plan's Opp. at 4 & n.3.)
Allied contends that it needs an accounting from the Old Plan of the exact dates that payments
were credited to the Old Plan, as well as the interest rate that applies to those overpayments.
(*See* Allied's Mem. at 3.)  But regardless of the exact amounts it paid, Allied asserts that its
initial withdrawal liability should be reduced to $0 and therefore the Old Plan must refund its
withdrawal liability payments as overpayments.  (*See id.*)

## II.    DISCUSSION

### A.    Entry of Judgment and Accounting

Under Federal Rule of Civil Procedure ("FRCP") 58(a), "[e]very judgment . . . must be set out in a separate document," subject to certain exceptions not relevant here.  Fed. R. Civ. P. 58(a).  "A party may request that judgment be set out in a separate document as required by Rule 58(a)."  Fed. R. Civ. P. 58(d).  Allied moves for entry of judgment on the Allied Order.  (ECF No. 59; *see* ECF No. 60 ("Allied's Mem.") at 1-2.)  Specifically, Allied requests an order that: (1) enters judgment as to the Allied Order pursuant to FRCP 58(d); (2) requires the Old Plan, within seven days of entry of that judgment, to provide an accounting of the Judgment Amount; (3) provides that if the Old Plan files a bond in satisfaction of FRCP 62 and a notice of appeal within thirty days of the entry of judgment, and the Second Circuit affirms the Allied Order, the Old Plan must, within seven days of a final determination or dismissal of the Old Plan's appeal, either (i) pay the Judgment Amount plus accrued interests and costs or (ii) file an accounting stating the amount the Old Plan must pay Allied and stating the factual and legal basis for that accounting; and (4) grants such other relief that the Court deems just and proper.  (ECF No. 59.)

While the Old Plan agrees that a judgment should be entered and does not oppose a judgment "that is substantively similar to the judgment in *Mar-Can*," (Old Plan's Opp. at 1; *see id.* at 7),[9] the Old Plan contends that the judgment should not order it to return the interim withdrawal liability payments that Allied has paid to the Old Plan, (*see id.* at 8-11).  Allied contends that the Court's adoption of the *Mar-Can* Decision independently obligates the Old

---

[9] The *Mar-Can* judgment reads:  "It is hereby ORDERED, ADJUDGED AND DECREED:  Judgment is hereby entered for Plaintiff on its claims under 29 U.S.C. § 1415 requiring Defendant to transfer pension assets and liabilities, as set forth in ECF Nos. 184 and 187, and requiring Defendant to reduce Plaintiff's withdrawal liability, as set forth in ECF No. 249."  (No. 20-CV-8743, ECF No. 266.)

Plan to reduce Allied's initial assessed withdrawal liability to $0 under 29 U.S.C. § 1415(c), and as a result, the Old Plan must return the withdrawal liability payments because they are considered overpayments, citing to 29 C.F.R. § 4219.31(d), (*see* Allied's Mem. at 1-2; Allied's Reply at 1-3), but it does not seek such a refund at this time, stating that it only seeks an order directing such a refund after the completion of the appeals process, (*see* Allied's Reply at 4).  Put another way, Allied argues that it is entitled to a judgment applying the § 1415(c) reduction to the approximately $290,000 in assessed withdrawal liability, resulting in $0 withdrawal liability as to the Old Plan.  (Allied's Mem. at 1; Allied's Reply at 1-4.)

The Old Plan argues that incorporation of the *Mar-Can* Decision does not require the Old Plan to refund anything, (Old Plan's Opp. at 8), and that there is no independent legal obligation to refund the payments because, under 29 U.S.C. § 1399(c)(2)'s plain language, the payments must continue pending "'any . . . appeal' before an arbitrator or a federal court," (Old Plan's Opp. at 8-9).  Moreover, the Old Plan contends that ordering return of the payments would contravene the legislative purpose and history of the Multiemployer Pension Plan Amendments Act ("MPPAA"), (*id.* at 10-11), and that requesting the refund while the Old Plan's appeal of the *Mar-Can* Decision and corresponding judgment is pending may lead to administrative and collection challenges if the Second Circuit ultimately concludes that the Old Plan was entitled to the withdrawal liability payments, (*id.*).

The Court believes that Allied would be entitled to a judgment directing the Old Plan to refund its withdrawal liability payments, for the reasons set forth in the *Mar-Can* and *Jofaz* decisions issued today.  (*See* No. 20-CV-8743, ECF No. 287; No. 22-CV-3455, ECF No. 42.) But I need not address that issue here because Allied is not seeking such an order.  (*See* Allied's Reply at 4 ("At present, [Allied] has only requested entry of judgment, calculation of the

damages with prejudgment interest, and an order requiring the [Old Plan] to refund all damages to [Allied] *after* the appeal process is complete.") (emphasis in original).)

Allied requests an accounting within seven days of the judgment.  (*See* Allied's Mem. at 3-4; Allied's Reply at 3-4.)  While the Old Plan does not oppose an accounting, (*see* Old Plan's Opp. at 8), I agree with the Old Plan that providing an accounting within seven days is not enough time given the lack of clarity regarding the initial withdrawal liability assessment and associated complications with the payments and interest rates that Allied has identified, (*see* Allied's Mem. at 3).  That said, the Old Plan does not persuade me that such accounting should take "a matter of weeks."  (*See* Old Plan's Opp. at 8.)  Therefore, I deny Allied's request that the Old Plan complete the accounting within seven days of the judgment, and I direct the Old Plan to complete an accounting within fourteen days instead.

### B.    <u>Waiver of FRCP 62 Bond Requirement</u>

Based on the supporting declaration of Allied's counsel that suggests Allied will seek enforcement of the judgment, (ECF No. 59-1 ¶¶ 1, 16), the Old Plan assumes – out of an abundance of caution – that Allied's motion requests a denial of the Old Plan's anticipated request for waiver of a supersedeas bond, (*see* Old Plan's Opp. at 1 & n.1, 11 & n.8).  The Old Plan argues that this request is premature because FRCP 62 first requires entry of judgment before a party may seek to stay its enforcement, and considering this argument now would be improper under the Federal Rules.  (*See id.* at 11-12.)  Assuming this Court were to consider the issue, the Old Plan argues that the bond requirement should be waived. (*See id.* at 13-15.)  Allied responds that it does not request an order seeking to enforce the judgment within thirty days, regardless of whether the Old Plan appeals.  (Allied's Reply at 4.)  Rather, Allied reiterates that it only requests "entry of judgment, calculation of the damages with prejudgment interest, and an

order requiring the [Old Plan] to refund all damages to [Allied] *after* the appeal process is complete." (*Id.* at 4 (emphasis in original).)

"At any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b).[10] "The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." *Id.* The purpose of the bond requirement in FRCP 62(b) is twofold: "to ensure that the prevailing party will recover in full, if the decision should be affirmed, while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed." *In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) (*per curiam*). The Court may exercise its discretion to waive the bond requirement "if the appellant provides an acceptable alternative means of securing the judgment." *Id.*; *see Sire Spirits, LLC v. Green*, No. 21-CV-7343, 2023 WL 1516574, at *1 (S.D.N.Y. Feb. 3, 2023). In assessing whether the bond requirement should be waived and the "other security" proposed by the appellant accepted, the Second Circuit has identified the following factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Nassau*, 783 F.3d at 417-18; *see In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, No. 11-CV-1471, 2013 WL 12444540, at *2 (S.D.N.Y. Jan. 29, 2013)

---

[10] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

(considering similar factors).[11]  The Second Circuit has concluded that these factors, rather than

the traditional stay factors under *Hilton v. Braunskill*, 481 U.S. 770 (1987), "more directly

address the primary purpose of Rule 62[b]."[12]  *Nassau*, 783 F.3d at 418; *see EMA Fin., LLC v.*

*Joey New York Inc.,* No. 17-CV-9706, 2022 WL 2399754, at *2 (S.D.N.Y. July 1, 2022) ("The

traditional four-factor test often used in connection with stays of injunctions . . . applies only

when the judgment sought to be stayed is for injunctive or equitable relief."); *John Wiley & Sons,*

*Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) (traditional four-factor

stay test applies "only when the judgment sought to be stayed is for injunctive or equitable

relief") (collecting cases).[13]

     Based on the language of FRCP 62(b), the Court agrees with the Old Plan that this issue

is premature at this stage.  It is also not clear to the Court that the parties have fully briefed the

---

    [11]  While there is some conflicting case law regarding whether the Court must first
consider the traditional stay factors before determining whether to waive the FRCP 62(b) bond
requirement, "there is a more significant and recent body of case law interpreting Rule 62[b] as
entitling an appellant to a stay as a matter of right upon posting of a supersedeas bond or upon
the court's waiver of the bond requirement where the appeal is taken from a monetary judgment
or its equivalent."  *Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2015 WL 13720237, at *2 n.1
(E.D.N.Y. June 4, 2015) (collecting cases).

    [12]  "Rule 62(b) was formerly Rule 62(d)."  *Georgiev v. Adsad, LLC*, No. 19-CV-122, 2021
WL 3159853, at *1 n.1 (S.D.N.Y. June 21, 2021).

    [13]  The judgment here is akin to a monetary judgment and not an injunction or for other
equitable relief.  *See Frommert v. Conkright*, 639 F. Supp. 2d 305, 310 (W.D.N.Y. 2009)
(fundamental question to determine whether a judgment is monetary in nature is "whether the
monetary value of the judgment can be calculated and secured with relative ease"); *In re Bakery*
*& Confectionery*, 2013 WL 12444540, at *1 (judgment requiring that "defendants calculate and
pay benefits to plaintiffs pursuant to the terms of the pension plan . . . to the date of judgment,
plus pre-judgment interest" was "monetary in nature")*; cf. Korea Shipping Corp. v. N.Y.*
*Shipping Ass'n*, 811 F.2d 124, 126 (2d Cir. 1987) (finding no appellate jurisdiction because "the
district court was not exercising its equity powers when it issued the payment order, but acting
instead in accordance with a statute that it believed granted a right to preliminary relief");
*Bowers*, 719 F. Supp. at 171 ("A Court does not draw upon its equitable powers when ordering
interim withdrawal liability payments, but merely enforces a statutory right granted to plan
sponsors by Congress.").

issue or that Allied will oppose any waiver request.  And the Court would like to make the determination on the most up-to-date information.  Thus, if the Old Plan desires a stay of enforcement of the judgment pending appeal, it shall so move in the ordinary course.  If the motion is not on consent, the parties should confer on a briefing schedule and propose it to the Court by letter at the time the motion is filed.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs motion for entry of judgment is GRANTED.  The Court will enter judgment in accordance with ECF No. 55 and this decision.  The judgment will direct the Old Plan to transfer pension assets and liabilities pursuant to 29 U.S.C. § 1415 (to the extent it has not already done so) and to calculate the corresponding reduction in Allied's withdrawal liability.  Plaintiffs' motion is GRANTED in part with respect to its request for an accounting but DENIED as to the request that the accounting occur within seven days of the entry of judgment.  Instead, the Old Plan is directed to provide Plaintiffs, within fourteen days, an accounting of their withdrawal liability overpayments and the calculated interest using the applicable rates.  The stay entered by then-Magistrate Judge Davison in ECF No. 43 is lifted. The Clerk of Court is respectfully directed to terminate the pending motions, (ECF Nos. 59, 63).[14]

**SO ORDERED.**

Dated: August 21, 2024
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[14] ECF No. 63 is a request for oral argument, which the Court finds unnecessary.

11